Ronald PARKS, Appellee,

v.

CITY OF MARSHALLTOWN, Iowa,
and Dale Simmons, Appellants.

No. 88–735.

Supreme Court of Iowa.

May 17, 1989.

Joel T.S. Greer of Cartwright, Druker &
Ryden, Marshalltown, for appellants.

Paul C. Peglow of Johnson, Sudenga, Latham & Peglow, Marshalltown, for appellee.

Considered by HARRIS, P.J., and LARSON, NEUMAN, SNELL and ANDREASEN, JJ.

HARRIS, Justice.

Parks was awarded punitive but not compensatory damages in this suit which arose after he was passed over for promotion as a city employee. We have no difficulty in deciding the punitive damages are inappropriate. More difficult is selecting which of the city's theories should be the basis for rejecting them. We reverse.

Plaintiff Parks was employed as a truck driver with the street and alley department of the defendant City of Marshalltown. In 1985 the city created a new job classification, light equipment operator. Three positions in the classification were opened. The three operators were to run the city's roto-mill, a machine which ground off old road surfaces before streets were repaired. The new position paid fifty-two cents per hour more than Parks was then receiving.

During 1984 and 1985 Parks operated the machine with two workers who ended up being selected for two of the three vacancies. Largely on a finding of seniority, the third position went to another worker rather than Parks. The city thinks it is reasonable that seniority played a prominent role in the selection. The workers' employment contract specified several factors for promotion selections, including job experience.

When selections were announced Parks filed a grievance, claiming the terms of the employment contract had not been followed. The grievance board found however that the selection had been properly made on the basis of overall job experience, not just experience on the roto-mill. The grievance was denied.

Parks then procured the 1980 and 1981 time cards for Tim Eggers, the third successful candidate, and made copies of them. He then asked the city to produce Eggers' time cards. A comparison showed the cards had been altered to indicate Eggers had worked the roto-mill during 1981 when in fact he had not.

Parks then filed this suit, claiming intentional infliction of emotional distress, violation of due process under 42 U.S.C. section 1983, and breach of the employment contract. The jury returned a verdict against Dale Simmons, the street commissioner who made the three selections, and against the city on the breach of contract claim and awarded one dollar in nominal damages against each defendant.[1] The jury also awarded $5000 punitive damages against the city, but not against Simmons. The city appealed and Parks cross appealed.

In this action at law our review is for correction of errors at law. Iowa R.App.P. 4.

I. Because we rest our decision on the status of the defendant as a city we can pass a number of the city's contentions. We assume without deciding that Parks is correct that his claim is in contract, not tort. He is driven to this position by Iowa Code section 613A.4(5) (1987) which bars punitive damage claims under the state tort claims Act.[2]

We also pass the question whether punitive damages may be awarded on these facts for malicious breach of an employment contract under *Pogge v. Fullerton Lumber Co.*, 277 N.W.2d 916, 919–20 (Iowa 1979). In *Pogge* we developed the principles for awarding punitive damages in contract actions. *See also Berryhill v. Hatt*, 428 N.W.2d 647, 656 (Iowa 1988). It is not necessary for us to decide whether Parks' claim qualifies.

1. The jury found for defendants on the § 1983 claim. It is not an issue in the appeal.

2. The statute reads:
   The liability imposed by section 613A.2 shall have no application to any claim enumerated in this section. As to any such claim, a municipality shall be liable only to the ex-

tent liability may be imposed by the express statute dealing with such claims and, in the absence of such express statute, the municipality shall be immune from liability.

   .    .    .

   5. Any claim for punitive damages.

■ If we were to apply the *Pogge* theory, Parks would face another principle. Tortious conduct after the breach of a contract, no matter how malicious or inexcusable, will not form the basis for recovery of punitive damages for a breach of contract. *See* 25 C.J.S. *Damages* § 120 at 1129 (1966). Hence the alteration by someone of Eggers' time cards would not itself form the basis for recovery of punitive damages.

■ Finally we do not decide whether Parks made a showing of either actual or legal malice. An award of punitive damages is appropriate only when a party acts with actual or legal malice. *Barnhouse v. Hawkeye State Bank*, 406 N.W.2d 181, 184 (Iowa 1987). Actual malice is shown by such things as personal spite, hatred, or ill will. Legal malice is established by showing wrongful conduct committed with a willful or reckless disregard for the rights of another. *Id.*

■ II. Iowa Code section 613A.4(5) was enacted in direct response to our holding in *Young v. City of Des Moines*, 262 N.W.2d 612, 622 (Iowa 1978). *See also City of Cedar Rapids v. Northwestern Nat'l Ins.*, 304 N.W.2d 228, 229–30 (Iowa 1981).

There is considerable logic in Parks' punitive damage claim. Our cited cases stated that cities must answer in punitive damages in appropriate cases. The legislature responded by amending the state *tort* claims Act, expressly barring punitive damages under that chapter. Parks persuaded the trial court that punitive damages for breach of contract remained unaffected by the amendment.

The position seems unassailable, viewed strictly as a routine matter of statutory construction. The difficulty is that, while the legislative amendment was limited to torts in its sweep, its effect was to undermine the entire basis for our holdings in *Young* and *City of Cedar Rapids*, both of which predated the 1982 amendment.

A strong argument can be made that our *Young* and *City of Cedar Rapids* holdings were flawed. It is axiomatic that punitive damages are not awarded because a plaintiff deserves them, that their only purpose is "to punish the defendant and to deter the offending party and like-minded individuals from committing similar acts." *Ryan v. Arneson*, 422 N.W.2d 491, 496 (Iowa 1988). In enacting section 613A.4(5) the legislature expressed obvious disagreement that either of these purposes could be appropriately served by exacting "smart money" from the taxpayers.

There is advantage in having a similar rule for tort and contract. *Cf. Kersten Co. Inc. v. Dep't of Social Servs.*, 207 N.W.2d 117, 122 (Iowa 1973) (state waives immunity in contract by entering it). Nevertheless, under a strict reading of the amendment, the State would be liable in punitive damages in contract but not for tort. Yet, considering the nature and purpose of punitive damages, there is no logical reason to protect a tortfeasor more than a person who breaches a contract.

We hold that punitive damages cannot be recovered against a city for breach of contract. Our holdings to the contrary in *Young* and *City of Cedar Rapids* are overruled.

It follows that Parks' punitive damage award must be reversed.

III. In addition to requesting monetary relief Parks' petition asked for declaratory relief. Parks requested the court to order he be promoted to the position of light equipment operator. After the jury verdict Parks filed an application for supplemental relief, requesting that the city be required to reopen the bidding for the position of light equipment operator. The trial court denied the application upon determining that Parks had elected another remedy. Parks cross appeals from the denial.

In order for the defense of election of remedies to be available, three elements must be established:

(1) The existence of two or more remedies;

(2) An inconsistency between them; and

(3) A choice of one of the remedies.

*First Security Bank of Brookfield v. McClain*, 403 N.W.2d 788, 790 (Iowa 1987). Parks concedes the existence of the first element but disputes the second and third.

We think all three elements of the defense appear.

■ Inconsistency, the second element, exists only when the facts relied on as the basis for one remedy are repugnant and contradictory to the facts relied on as the basis for another remedy. *Id.* For one proceeding to be a bar to another for inconsistency, the remedies must be so inconsistent that a party could not logically assume to follow one without renouncing the other. 25 Am.Jur.2d *Election of Remedies* § 11 at 653 (1966); 28 C.J.S. *Election of Remedies* § 4 at 1066 (1941). Parks could not reasonably expect damages as compensation for future wages lost and, at the same time, be ordered placed in the job so as to receive the same wages.

Choice of remedy, the third element, occurs when a party carries a case to a conclusion and obtains a decision on the issues. 25 Am.Jur.2d *Election of Remedies* § 19 at 661; 28 C.J.S. *Election of Remedies* § 14 at 1087. Parks did just that with his claim for loss of future earnings.

The trial court was correct in ruling Parks was barred from seeking supplemental relief.

REVERSED ON APPEAL; AFFIRMED ON CROSS APPEAL.